**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

---

|                                            |     |
| ------------------------------------------ | --- |
|                                            | )   |
| **HUNTER FLESHOOD, JR.,**                  | )   |
|                                            | )   |
| **Plaintiff,**                             | )   |
|                                            | )   |
| **v.**                                     | )   |
|                                            | )   |
| **MICHAEL J. ASTRUE,**                     | )   |
| **Commissioner of Social Security,**       | )   |
|                                            | )   |
| **Defendant.**                             | )   |
|                                            | )   |

**CIVIL NO. 3:09CV833**

---

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Hunter Fleshood, Jr., seeks

judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner

denying his applications for Social Security Disability ("DIB") and Supplemental Security

Income payments ("SSI").  The Commissioner's final decision is based on a finding by an

Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social

Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion

for summary judgment (docket no. 18) be DENIED; that Defendant's motion for summary

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil
Rules 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal
identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth
(except for year of birth), and any financial account numbers from its consideration of Plaintiff's
arguments and will further restrict its discussion of Plaintiff's medical information to only the extent
necessary to properly analyze the case.

judgment (docket no. 20) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on June 5, 2006, claiming disability due to arthritis in his right knee and back, pain in his left leg, and tachycardia[2], with an alleged onset date of August 1, 2003. (R. at 25-29, 94-104, 115.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[3] (R. at 50-61.) On May 19, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 21-40.) On July 11, 2008, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act where Plaintiff retained the residual functional capacity to perform his past relevant work as actually and generally performed in the national economy. (R. at 9-16.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-4.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

---

[2] Excessive rapidity in the action of the heart. Dorland's Illustrated Medical Dictionary 1890 (31st ed. 2007).

[3] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270

F.3d at 177.  The analysis is conducted for the Commissioner by the ALJ, and it is that process

that a court must examine on appeal to determine whether the correct legal standards were

applied, and whether the resulting decision of the Commissioner is supported by substantial

evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the

time of the application and, if so, whether the work constituted "substantial gainful activity"

(SGA).[4]  20 C.F.R. §§ 416.920(b), 404.1520(b).  If a claimant's work constitutes SGA, the

analysis ends and the claimant must be found "not disabled," regardless of any medical

condition.  Id.  If the claimant establishes that he did not engage in SGA, the second step of the

analysis requires him to prove that he has "a severe impairment . . . or combination of

impairments which significantly limit[s] [his] physical or mental ability to do basic work

activities."  20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c).  In order to qualify as a

severe impairment that entitles one to benefits under the Act, it must cause more than a minimal

effect on one's ability to function.  20 C.F.R. § 404.1520(c).  At the third step, if the claimant has

an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result

in death, it constitutes a qualifying impairment and the analysis ends.  20 C.F.R. §§ 416.920(d),

---

[4] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).  Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities.  20 C.F.R. § 404.1572(c).

404.1520(d).  If the impairment does not meet or equal a listed impairment, then the evaluation

proceeds to the fourth step in which the ALJ is required to determine whether the claimant can

return to his past relevant work[5] based on an assessment of the claimant's residual functional

capacity (RFC)[6] and the "physical and mental demands of work [the claimant] has done in the

past."  20 C.F.R. §§ 416.920(e), 404.1520(e).  If such work can be performed, then benefits will

not be awarded.  Id.  However, if the claimant cannot perform his past work, the burden shifts to

the Commissioner at the fifth step to show that, considering the claimant's age, education, work

experience, and RFC, the claimant is capable of performing other work that is available in

significant numbers in the national economy.  20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v.

Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5

(1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The Commissioner can carry his

burden in the final step with the testimony of a vocational expert ("VE").  When a VE is called

to testify, the ALJ's function is to pose hypothetical questions that accurately represent the

claimant's RFC based on all evidence on record and a fair description of all the claimant's

impairments so that the VE can offer testimony about any jobs existing in the national economy

that the claimant can perform.  Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).  Only when

---

[5] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved.  20 C.F.R. §§ 416.965(a), 404.1565(a).

[6] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR-96-8p.  When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id.  (footnote omitted).

5

the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful."  Id.  If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV.  ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability.  (R. at 11.)  At steps two and three, the ALJ found that Plaintiff had the severe impairments of osteoarthritis, degenerative disc disease of the lumbar spine, and tachycardia, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage.  (R. at 11-12.)  The ALJ next determined that Plaintiff had the RFC to perform a wide range of medium work with the following restrictions: Plaintiff was capable of lifting/carrying fifty pounds occasionally and twenty-five pounds frequently; Plaintiff could stand and/or walk about six hours in an eight-hour workday; Plaintiff could sit about six hours in an eight-hour workday; Plaintiff could engage in unlimited pushing/pulling other than the exceptions noted with lifting and carrying; Plaintiff could frequently use ramps and stairs, but only occasionally climb ladders, ropes, or scaffolds; Plaintiff could frequently balance and stoop, but only occasionally crouch and crawl; and Plaintiff had no manipulative, visual, communicative, or environmental limitations  (R. at 12-16.)

The ALJ then determined at step four of the analysis that Plaintiff could perform his past relevant work as a land surveyor because such work does not require activities precluded by Plaintiff's RFC.  (R. at 16.)  Because the ALJ determined that Plaintiff was capable of

performing his past relevant work, it was unnecessary to pursue the analysis to step five in which the Commissioner would have had the burden to show that, considering the claimant's age, education, work experience, and RFC, the claimant was capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f); 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that he was not entitled to benefits. (R. at 16.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of his position, Plaintiff argues that the ALJ: (1) improperly assessed the opinions of his treating physicians and other non-examining physicians; (2) improperly discounted Plaintiff's credibility as to the nature and impact of his impairments; (3) improperly evaluated his RFC; and (4) improperly concluded that he was capable of performing his past relevant work. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 1.) Plaintiff has also attached to his motion a physician's opinion, dated April 29, 2009, which does not appear in the administrative record. (Pl.'s Mem. at 2-3.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 10-19.)

A.     **The ALJ properly evaluated Plaintiff's treating physician's opinion and the non-examining physicians' opinions in accordance with controlling agency regulations.**

Plaintiff argues that the state physicians have misinterpreted or otherwise overlooked medical evidence concerning his physical condition. (Pl.'s Mem. at 1.) Plaintiff also asserts that his treating physician's opinion more accurately describes his impairments and limitations than the opinions of the SSA physicians. (Id.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or

when it is not otherwise well supported.  Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005).  See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Plaintiff's treating physician, Dr. Jeff McLeod, M.D., issued a four sentence opinion on April 18, 2008, stating that Plaintiff suffered from generalized arthritis and was disabled because of chronic pain and join deformities, especially in his hands.  (R. at 224.)  Dr. McLeod also suspected that Plaintiff had osteoarthritis and sero-negative rheumatoid arthritis, but that Plaintiff needed to see a rheumatologist for further evaluation.  (R. at 224.)  Dr. McLeod did not assess Plaintiff's functional capabilities or limitations, nor did he indicate any objective evidence to support his opinion.

SSA physician Dr. Nancy Powell, M.D., after personally examining Plaintiff on February 3, 2007, found that Plaintiff could likely stand or walk about six hours and sit without restrictions; could likely lift twenty to fifty pounds occasionally and ten to twenty-five pounds frequently; could have possible occasional postural limitations with climbing, kneeling, crouching, and crawling because of his tachycardia and knee and shoulder pain; and did not have any manipulative or environmental limitations, although he may have limitations with driving during episodes of tachycardia.  (R. at 187-90.)  SSA physician Dr. Stuart Solomon, M.D. opined that Plaintiff had the RFC for medium work.  (R. at 191-204.)  In making this determination, he assigned great weight to Dr. Powell's recommendation for medium work with possible postural limitations.  (R. at 197.)  Dr. Solomon noted that Dr. Powell's conclusions were "well supported by the medical evidence and not inconsistent with the other evidence in the file."  (R. at 197.)  Dr. Solomon accordingly adopted Dr. Powell's assessment.  (R. at 197.)

The ALJ found that Dr. McLeod's opinion was contradicted by credible objective and

subjective evidence in the record, and accordingly assigned the opinion very little evidentiary weight. (R. at 16.) The ALJ also noted that Dr. McLeod's opinion was unsubstantiated in that the "overwhelming weight of the credible evidence" contradicted his opinion that Plaintiff was disabled. (R. at 15-16.) The ALJ found Dr. McLeod's opinion "conclusory" and noted that there was "nothing in [the] letter that could come close to challenging the careful functional assessments made by Dr. Solomon and Dr. Powell." (R. at 15-16.) The ALJ further noted that though Dr. McLeod indicated that he was a treating source, Plaintiff testified that he had not seen Dr. McLeod for "years." (R. at 16, 36.) In fact, in a letter sent to the Appeals Council, Plaintiff admitted that he had never seen a doctor on a regular basis, and that Dr. McLeod had never examined his knee or back and was simply relying on Plaintiff's subjective complaints to make an assessment. (R. at 235, 241.) Also, Plaintiff wrote that Dr. McLeod ordered x-rays of Plaintiff's hands and told him that he had an arthritic condition, but, because he was not a specialist, stated that Plaintiff would have to see a specialist for further evaluation. (R. at 241.)

Instead, the ALJ assigned "great weight" to Dr. Solomon's opinion that Plaintiff had the RFC for medium work, and found that there was "nothing credible in [the] record that would give [Plaintiff] a more restrictive residual functional capacity than the one in Finding 5." (R. at 14-15.) As the ALJ noted, the medical and other evidence of record did not support Dr. McLeod's conclusory opinion that Plaintiff was unable to work. Specifically, there are no treatment records from Dr. McLeod in the record. Furthermore, Plaintiff testified that he had recently started seeing Dr. McLeod again and that he had only seen him once in "years." (R. at 36.) Also, there are few treatment records from any other examining physicians. Hospital emergency records from November 2004 also reflect that Plaintiff reported low back pain, but

that he appeared in no acute distress. (R. at 171-74.) Additional evidence discloses that a chest x-ray revealed no acute process, while a pelvis x-ray revealed no acute fracture or dislocation. (R. at 169-70.) In January 2007, a radiology study of Plaintiff's right knee revealed osteoarthritic changes with possible small effusion, bony deformity of the fibular neck, and possible deformity of the medial tibial plateau, all of which could represent *prior* trauma. (R. at 183.) A radiology study of Plaintiff's lumbar spine also showed prominent grade II anterolisthesis[7] of L5 on S1, mild retrolisthesis[8] of L3 on L4, and mild leftward scoliosis with lumbar degenerative changes[9]; yet there are no notes indicating how long Plaintiff had the impairments, or whether the impairments might have affected Plaintiff's abilities to work or function. (R. at 185.)

The only other medical evidence of record, aside from the SSA physicians' opinions, is the report of Dr. Powell, who personally examined Plaintiff on February 3, 2007. (R. at 187-90.) Dr. Powell noted several observations, such as Plaintiff did not use assistive devices; his gait was normal; he was able to walk from the waiting room to the examination room without difficulty; he was able to sit and get on and off the exam table without difficulty; he was able to go from supine to sitting position without difficulty; he was able to take off his shoes and put them back on; he was able to bend to retrieve his shoes from under the chair and put them on; his motor

---

[7] Foward displacement of one vertebra over another. Dorland's at 99, 1779. The ratio of amount of slippage to vertebral-body width is obtained as a percentage. Grade I is a ratio of 0-25%, grade II is 25-50%, grade III is 50-75%, and grade IV is 75-100%. http://emedicine.medscape.com/article/396016-overview.

[8] Posterior displacement of one vertebral body on the subjacent body. Dorland's at 1660-61.

[9] A lateral deviation in the normally straight vertical line of the spine, with deterioration of the loins (the parts of the sides of the back between the thorax and the pelvis). Dorland's at 486, 1092, 1706.

strength was 5/5 in upper and lower extremities; his grip and pinch were 5/5; he had no restricted range of movement; his straight leg raise was negative; and he had a regular heart rate and rhythm, though slightly tachycardiac. (R. at 187-90.) Dr. Powell accordingly assessed that Plaintiff had the RFC for medium work, with the possible postural limitations outlined earlier. (R. at 187-90.)

The only evidence that tends to support Plaintiff's allegations of disability are his own statements, yet such statements are contradicted by the other evidence of record, specifically the medical evidence and Plaintiff's reported daily activities. While Plaintiff's daily activities appear somewhat limited, Plaintiff did report that he was able to lift twenty-five pounds and walk a quarter mile, which he did with a walking stick or cane, though not prescribed. (R. at 127.) Plaintiff also reported that he had been prescribed an anti-inflammatory and painkiller in 2003, but he "felt too dopey" and groggy when on the medication. (R. at 138-39.) He noted that he took the anti-inflammatory, but never the painkiller. (R. at 138-39.) At the hearing before the ALJ, Plaintiff testified that he had not had his tachycardia condition evaluated, though he claimed to have episodes of such a problem every three to four weeks. (R. at 27-29.) Plaintiff also reiterated that he could walk a quarter mile before experiencing pain and could lift twenty-five to thirty-five pounds. (R. at 30-31.) Despite his alleged arthritis in his hands, Plaintiff testified that he was able to take care of his personal needs, as well as write daily. (R. at 32, 38.) Plaintiff also testified that he had not seen Dr. McLeod in "years" before the one visit that previous April, and that he saw a Dr. Readur about his knee and his back. (R. at 36, 218.) Plaintiff stated that the pain in his back was so bad that he "thought there was something broken," and that Dr. Readur told him it was arthritis and "was going to get worse." (R. at 37,

218.)  Further, in Plaintiff's one visit to Dr. McLeod, of which there is no treatment record,

Plaintiff testified that he only received a prescription.  (R. at 37.)

The earlier noted evidence provides substantial support for the ALJ's decision to credit

Drs. Solomon and Powell's assessments of Plaintiff's RFC, rather than the conclusory opinion of

Dr. McLeod, where Plaintiff's allegations of disabling limitations are not substantiated by the

longitudinal record.  Accordingly, the Court recommends that the ALJ's decision be affirmed.

> **B.     The Court cannot consider the new evidence offered by Plaintiff and a
>         remand to consider the new evidence is inappropriate.**

Plaintiff has attached an opinion from Jeffrey K. Wilson, M.D., dated April 29, 2009, to

his motion for summary judgment.  (Pl.'s Mem. at 2-3.)  Plaintiff contends that he forwarded the

opinion to the Appeals Council, and that the opinion of Dr. Wilson contradicts those of the state

physicians.  (Pl.'s Mem. at 1.)

In determining whether the ALJ's decision was supported by substantial evidence, a

district court cannot consider evidence which was not presented to the ALJ.  Smith v. Chater, 99

F.3d 635, 638 n.5 (4th Cir. 1996) (citing U.S. v. Carlo Bianchi & Co., 373 U.S. 709, 714-15

(1963); Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972) (citing Vitek v. Finch, 438

F.2d 1157 (4th Cir. 1970) (noting that reviewing courts are restricted to the administrative record

in determining whether the decision is supported by substantial evidence).

Although the Court cannot consider evidence which was not presented to the ALJ, the

Act provides that the Court may remand a case for reconsideration in two situations.  42 U.S.C. §

405(g).  The first is a "sentence four" remand, which provides that the "court shall have power to

enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the Commissioner of Social Security with or without remanding the

13

cause for a rehearing." <u>Id</u>.  The second is a "sentence six" remand, which provides that the court

"may at any time order additional evidence to be taken before the Commissioner of Social

Security, but only upon a showing that there is new evidence which is material and that there is

good cause for the failure to incorporate such evidence into the record in a prior proceeding."

<u>Id</u>.; <u>see also Borders v. Heckler</u>, 777 F.2d 954, 955 (4th Cir. 1985) (a reviewing court may

remand a case on the basis of newly discovered evidence if four prerequisites are met: (1) the

evidence must be relevant to the determination of disability at the time the application was first

filed and not be merely cumulative; (2) the evidence must be material; (3) there must be good

cause for failure to submit the evidence before the Commissioner; and (4) the claimant must

present to the remanding court a general showing of the nature of the new evidence.).  Because

Plaintiff has offered new evidence to the Court, the Court will address whether Plaintiff has

fulfilled the requirements to justify a sentence six remand.

      Plaintiff meets the fourth requirement of <u>Borders</u>' standard for a sentence six remand.

777 F.2d at 955.  Plaintiff has made a general showing of the nature of the new evidence, as he

has attached it to his Motion for Summary Judgment.  However, the report does not meet the

requirements that the new evidence be relevant and material in order to justify a sentence six

remand; nor does it appear that he has shown good cause for his failure to submit the evidence

earlier.  New evidence must relate to the determination of disability *at the time the application*

*was first filed*, and it must not concern evidence of a later-acquired disability, or of the

"subsequent deterioration of the previously non-disabling condition."  <u>Szubak v. Sec'y of Health</u>

<u>& Human Services</u>, 745 F.2d 831, 833 (3rd Cir. 1984) (citing <u>Ward v. Schweiker</u>, 686 F.2d 762,

765 (9th Cir. 1982); <u>see also Borders</u>, 777 F.2d at 955.  Evidence must also be material to the

extent that the Commissioner's decision "'might reasonably have been different'" had the new evidence been before him. Borders, 777 F.2d at 955-56 (quoting King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)). Dr. Wilson's opinion is dated April 29, 2009, which is almost a year after the ALJ made his determination. While the report addresses Plaintiff's severe impairments of osteoarthritis and lumbar spine issues, the report does not indicate how these impairments affected Plaintiff prior to the ALJ's decision. Notably, the opinion also indicates that Dr. Wilson had not seen Plaintiff "for about 20 years." (Pl.'s Mem. at 2.) Dr. Wilson's opinion addresses possible "subsequent deterioration of the previously non-disabling condition." Szubak, 745 F.2d at 833. Nevertheless, this Court cannot make any finding as to whether Plaintiff's condition has, in fact, deteriorated.

If Plaintiff believes his condition has deteriorated since the ALJ's decision, his proper remedy is to file a new application and submit the additional evidence with such application. However, if Plaintiff believes his impairments have been disabling since his alleged onset date, then he has not shown good cause for his failure to submit the opinion earlier. Even though the opinion was obtained subsequent to the ALJ's decision, it appears that Plaintiff could have obtained this opinion and/or treatment prior to the ALJ's decision. Furthermore, the opinion is entirely unsubstantiated, as by the doctor's own admission it was the first time he had seen Plaintiff in twenty years, and the opinion also pertains to the overall issue of disability and whether or not Plaintiff can work – an issue that is reserved to the Commissioner. 20 C.F.R. § 404.1525(e)(1); SSR 96-5p.

The Appeals Council will not consider additional evidence a claimant submits if it does not relate to the period on or before the date of the ALJ's decision. 20 C.F.R. §§ 404.976(b),

416.1476(b).  Instead, the Appeals Council should return the evidence to the claimant.  <u>Id.</u>  In this case, the Court is unclear as to whether or not the Appeals Council returned the opinion to Plaintiff, assuming the Appeals Council received it.  Assuming the Appeals Council did receive the opinion, and did not return such to Plaintiff, the failure to do so nevertheless constituted harmless error, as Dr. Wilson's opinion was not relevant or material to the determination of disability at the time the application was filed.  20 C.F.R. §§ 404.970(b), 404.976(b), 416.1470(b), 416.1476(b).  <u>See</u> <u>Kotteakos v. U.S.</u>, 328 U.S. 750, 757 (1946) (stating that "harmless error" includes technical errors or defects that do not affect the claimant's substantial rights).

Because this new evidence does not relate to the determination of disability at the time the application was first filed, it cannot be considered relevant or material; therefore, it fails to meet the requirements of a sentence six remand.  Further, it was proper for the Appeals Council to not consider Dr. Wilson's opinion or include it in the administrative record.

**C.      The ALJ's credibility analysis is supported by substantial evidence and application of the correct legal standard.**

Plaintiff asserts that the ALJ's decision contained several errors with regards to his testimony.  (Pl.'s Mem. at 1.)  Plaintiff contends that these errors led to wrongful conclusions concerning the extent of his abilities and the scope of his limitations.  (<u>Id.</u>)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1).  The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints.  In evaluating a claimant's subjective symptoms, the ALJ must

follow a two-step analysis.  Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a).  The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms.  Id.; SSR 96-7p, at 1-3.  The ALJ must consider all the medical evidence in the record.  Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added).  If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work.  Craig, 76 F.3d at 595.  The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements.  Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations.  See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997).  The Court of Appeals for the Fourth Circuit (as the immediate controlling appellate authority for this Court) has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)).  Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason

at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

Though the ALJ found that Plaintiff had medically determinable impairments that could reasonably be expected to produce his alleged symptoms, the ALJ concluded that the credible evidence of record did not support Plaintiff's allegations of the extent of his limitations, and therefore found him not entirely credible. (R. at 14.) In making this determination, the ALJ relied heavily on the reports of Drs. Solomon and Powell, discussed earlier. (R. at 14-15, 187-90, 192-204.) Specifically, the ALJ noted that Dr. Solomon found the Plaintiff to be only partially credible, and that there was no credible evidence to contradict his findings, which were substantiated by three other doctors. (R. at 14.) As noted earlier, Dr. Solomon's opinion was afforded great weight. (R. at 14.) The ALJ also relied on Dr. Powell's indication that Plaintiff had only "slight" tachycardia. (R. at 15.) Further, the ALJ noted a November 2004 report from Virginia Commonwealth Health System, which showed no acute process in Plaintiff's chest and no fracture or dislocation of his pelvis. (R. at 15, 169-70.) The treatment notes further indicate that Plaintiff was advised to use a heating pad for pain. (R. at 219.)

The ALJ also noted that Plaintiff had not visited his doctor for years. (R. at 14.) In fact, Plaintiff admitted that he never saw a doctor on a regular basis. (R. at 235.) Plaintiff also did

not take any medications until April 2008, when he visited his doctor for the first time in years and received free sample medication. (R. at 14, 236.) The ALJ also noted that the medication upset Plaintiff's stomach so he discontinued its use. (R. at 14, 37, 236.) Other than the alleged side effects of the medication, Plaintiff asserted that he could not afford to fill the prescriptions. (R. at 38, 236.) Plaintiff stated that he does not take pain medication because he does not like the "grogginess and dullness of mind side effects." (R. at 139, 236.)

A lack of finances is a legitimate reason to not seek medical treatment, and cannot be considered against the claimant's interests if reasonable effort has been exercised to locate alternative resources. ( See S.S.R. 82-59.) If an individual is unable to afford a prescribed treatment that he or she is willing to undertake, and if free community resources (e.g., clinics, charitable and public assistance agencies, etc.) are not available, then the individual's "failure" to follow a prescribed treatment would not preclude a finding of "disability." Id. However, the claimant must explore all possible resources, and contacts with such resources and the claimant's financial circumstances must be documented. Id.

Plaintiff asserted in his letter to the Appeals Council, dated August 12, 2008, that he had "recently qualified for 100 percent financial assistance at MCV." (R. at 236.) There is no actual evidence of this qualification, but the Court assumes its truthfulness. However, it appears that Plaintiff had not yet seen any doctor since his April 2008 visit to Dr. McLeod. (R. at 236.) Plaintiff did write that he was "currently" seeking to see a rheumatologist at MCV (Medical College of Virginia) based on Dr. McLeod's referral. (R. at 236.) However, in Plaintiff's appeal to the Court he makes no mention of any such visit, and he has offered no evidence as to whether he actually met with the specialist. (Pl.'s Mem.) Plaintiff only submitted a report from an

orthopaedic surgeon at a clinic (West End Orthopaedic Clinic), which, as discussed earlier, is not properly before the Court. (Pl.'s Mem.) In fact, there is no evidence that Plaintiff ever sought treatment with any doctor at MCV, even though he alleged he qualified for one hundred percent financial assistance. (R. at 236.) Such circumstances demonstrate that community resources were available to Plaintiff, at least as of the time his claim was pending before the Appeals Council, if not earlier; yet he was unwilling to pursue them. Therefore, Plaintiff's lack of finances cannot be considered in support of his allegations of disability.

The ALJ noted that the only piece of evidence that might indicate Plaintiff had greater limitations, and would therefore support Plaintiff's allegations, was the unsubstantiated four sentence letter from Dr. McLeod, discussed earlier. (R. at 15.) Accordingly, because Plaintiff's allegations of the extent of his symptoms and limitations are not supported by objective medical evidence, the ALJ properly found that Plaintiff was not entirely credible.

**D. The ALJ properly evaluated Plaintiff's RFC.**

Plaintiff's central argument is that he does not have the RFC to perform any substantial gainful activity. (Pl.'s Mem. at 1.) However, as discussed earlier, the evidence in the record does not support the limitations Plaintiff alleges. The ALJ properly evaluated the treating and DDS physicians' opinions, and properly evaluated Plaintiff's credibility. Substantial evidence supports the ALJ's findings on both issues, and therefore supports the ALJ's RFC analysis.

**E. The ALJ's ultimate conclusion that Plaintiff is capable of performing his past relevant work and is therefore not disabled under the Act such that he is not entitled to benefits is supported by substantial evidence and application of the correct legal standard.**

Finally, Plaintiff argues that he is unable to perform his past work as a land surveyor, because it is "one of the most physically demanding, strenuous, labor intensive vocations." (R.

at 236.)  He argues that no one "could rightly call that within the range of medium work."  (R. at 237.)

At step four of the sequential analysis, the ALJ must assess the claimant's RFC and past relevant work to determine if the claimant is able to perform the tasks of her previous employment.  20 C.F.R. § 404.1520(a)(4)(iv).  The analysis requires that the ALJ evaluate all of the factors that contribute to the claimant's RFC, as well as the "physical and mental demands of [the claimant's] past relevant work."  20 C.F.R. § 404.1520(f).  In making the determination, the ALJ is permitted to utilize vocational experts, vocational specialists or other resources to determine whether a claimant can perform his/her past relevant work.  20 C.F.R § 404.1560(b)(2).  When utilizing a VE in this capacity, the VE "may offer expert opinion in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work."  Id.  The burden is still on Plaintiff at step four to prove that he is unable to perform his past relevant work.  Plaintiff must "show an inability to return to [his] previous work (*i.e.,* occupation), and not simply to [his] specific prior job."  DeLoatche v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983) (citing Jock v. Harris, 651 F.2d 133, 135 (2d Cir. 1981).).  Further, the Commissioner may rely on the general job categories of the Dictionary of Occupational Titles (DOT) as presumptively descriptive of a claimant's prior work.  Id.

In finding that Plaintiff was capable of performing his past relevant work as a land surveyor, the ALJ relied on the testimony of the VE.  (R. at 16.)  The VE testified that the position of "land surveyor" is identified in the DOT as a skilled, light in exertion position.  (R. at 41.)  However, the VE testified that Plaintiff actually performed his occupation up to a medium

level of exertion.  (R. at 41.)  The VE also testified that land surveyors are generally licensed by

the state, but because Plaintiff was not licensed by the state, she believed he was more of a semi-

skilled person at a lower level, rather than a skilled worker.  (R. at 41.)  The VE testified that

there was not a "land surveyor helper" in the DOT, so she based her opinions on how Plaintiff

actually performed his job.  (R. at 41-42.)  The VE specifically stated that she raised Plaintiff's

past work to a medium exertional level, rather than a light level, because Plaintiff stated that he

cut bushes with a machete, surveyed rough terrain, hammered with a sledgehammer, and lifted

up to fifty pounds.  (R. at 44.)

The VE's testimony confirmed that Plaintiff's current RFC for a wide range of medium

work comported with the requirements of Plaintiff's past relevant work as a land surveyor.  (R.

at 16.)  Accordingly, the ALJ properly found that Plaintiff was capable of performing his past

relevant work and was not disabled as defined by the Social Security Act.

## V.  CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's

motion for summary judgment (docket no. 18) be DENIED; that Defendant's motion for summary

judgment (docket no. 20) be GRANTED; and, that the final decision of the Commissioner be

AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert

E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and**

**recommendations of the Magistrate Judge contained in the foregoing report within**

**fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                      /s/

                                   DENNIS W. DOHNAL
                                   UNITED STATES MAGISTRATE JUDGE

Date: September 8, 2010
Richmond, Virginia